**NOT FOR PUBLICATION**

FILED
James J. Waldron

AUG 2 3 2016

U.S. Bankruptcy Court
Newark, New Jersey
BY _____ Deputy

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| |
|---|
| In Re: |
| **IN RE BELLA FIORE LLC,** |
| Debtor. |

Case No.: 14-14303 (RG)

Judge:    Hon. Stacey L. Meisel

Chapter:  11

## OPINION

**APPEARANCES**:


SEIDMAN & PINCUS, LLC
Mitchell B. Seidman, Esq.
Andrew Pincus, Esq.
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
***Counsel for 110 Skyline, LLC***


M. CABRERA & ASSOCIATES PC
Matthew M. Cabrera, Esq.
55 Old Nyack Turnpike, Suite 308
Nanuet, New York 10954
***Counsel for Bella Fiore LLC***

**THE HONORABLE STACEY L. MEISEL, BANKRUPTCY JUDGE**

## SUMMARY

Debtor is a single asset real estate debtor whose Chapter 11 petition lists only one creditor. The Creditor filed a Motion to Dismiss Debtor's Chapter 11 bankruptcy case. Debtor and Creditor then negotiated two related consensual orders, later entered by the Court, whereby Creditor would receive relief from the automatic stay, and Debtor would file missing monthly operating reports, and a certification of the management services by Debtor's principal. Thereafter, Debtor's principal would receive a management fee from the Debtor-in-Possession Account ("DIP Account"), and Debtor's counsel would file an application for compensation of professional services, which would also be paid out of the DIP Account. After the management fee and professional compensation were paid out of the DIP Account, the DIP Account was to be closed, with the remainder of funds in the DIP Account paid to the Creditor, and Debtor's bankruptcy case would be dismissed.

Pursuant to the consensual orders: the Creditor received stay relief and pursued its state court remedies; Debtor filed the two missing monthly operating reports and Debtor's principal's certification; Debtor's principal received the management fee from the DIP Account; and Debtor's counsel filed a fee application to be paid from the DIP Account. Subsequently, the Creditor discovered that the DIP Account contained less than the Creditor anticipated due to unauthorized post-petition transfers by Debtor's principal that depleted the DIP Account more than similar transfers by Debtor's principal in previous months, of which Creditor was aware.

Numerous motions were brought to this Court by the parties, all of which are being decided. First, the Creditor seeks to vacate the order dismissing the case, to which it consented, and to

litigate its original Motion to Dismiss. This Court finds that Creditor failed to meet its burden to prove vacating the Consensual Dismissal Order is warranted under Federal Rule of Civil Procedure 60(b), and instead Creditor must remain bound to the consensual orders to which it agreed.

Second, Debtor's counsel filed its "final" fee application, pursuant to the terms of the Consensual Dismissal Order, and then filed two supplemental fee applications as a result of the continued litigation after dismissal of the case. Debtor's counsel sought approval of all fees set forth in those applications. Creditor objected to both payment of professional fees from the DIP Account and the amount of the fees sought. This Court finds that Creditor consented, in the Consensual Dismissal Order, to permit one final fee application to be paid from the DIP Account. Debtor's initial "final" fee application, the amount of which the Court finds to be reasonable, necessary, and beneficial to the estate, is therefore granted in its entirety, to be paid out of the DIP Account. The Consensual Dismissal Order, however, only contemplated one final fee application. The parties are bound to the terms of the Consensual Dismissal Order, which only contemplated one final fee application. This Court, therefore, denies the two supplemental fee applications in their entirety.

Third, Debtor filed a Motion to approve the use of cash collateral, *nunc pro tunc*, in the event the Court vacated the Consensual Dismissal Order. This Motion is denied as moot because the Court is denying the Creditor's Motion to vacate the Consensual Dismissal Order.

Finally, Debtor's counsel filed a Motion to Withdraw as Attorney. This Court will allow counsel to withdraw fifteen days after entry of the Order accompanying and filed with this Opinion with one exception – if any motion is filed within the fifteen-day period, the Court rescinds permission for withdrawal without prejudice to Debtor's counsel's right to file another motion setting forth why withdrawal would not result in prejudice to the Debtor.

The Court held a hearing on the matters on January 12, 2016. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law.[1]

---

[1] To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent any conclusions of law might constitute findings of fact, they are adopted as such.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On March 7, 2014, Bella Fiore LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Debtor is a single asset real estate debtor, whose sole member is Jack Fiorelli ("Fiorelli"). Debtor's only asset is a three unit commercial building located at 215 S. Washington Avenue, Bergenfield, N.J. (the "Property"), which is currently leased to two commercial tenants.

According to Debtor, its only creditor is 110 Skyline LLC ("Skyline"), who holds a security interest in the Property as well as rights under an Assignment of Leases and Rents. Fiorelli also personally guaranteed the debt to Skyline.

On May 14, 2015, Skyline filed a Motion to dismiss Debtor's bankruptcy case for cause, claiming the petition was filed in bad faith, or, in the alternative, for relief from the automatic stay with respect to the Property. Debtor did not oppose the Motion, and instead the parties negotiated a resolution. The Court thereafter entered two orders memorializing the parties' compromise, which the parties agree fully and accurately memorializes their agreement.[2]

The first order, entered on July 14, 2015, vacated the automatic stay to allow Skyline to exercise and enforce its rights with respect to the Property ("Stay Relief Order"). Skyline thereafter, enjoying the benefit of stay relief, initiated state court proceedings for foreclosure and the appointment of a rent receiver. On August 8, 2015, the Superior Court of New Jersey, Bergen County, Chancery Division granted Skyline's uncontested motion to appoint a rent receiver over the Property.

---

[2] The orders were entered by the Honorable Rosemary Gambardella, U.S.B.J.

The second Order, entered on July 22, 2015, conditionally dismissed Debtor's bankruptcy

case ("Consensual Dismissal Order"). The Consensual Dismissal Order required Debtor to:

provide Skyline proof of insurance for the Property; file all missing monthly operating reports;

and pay all required quarterly fees owing to the U.S. Trustee's Office. It also required Fiorelli to

file a certification "delineating all management services provided to the Debtor's estate since the

petition date." The Consensual Dismissal Order directed Debtor to pay Fiorelli a management fee

of $13,600 from the DIP Account once he filed the certification and monthly operating reports.

The Consensual Dismissal Order also permitted:

> Within fourteen (14) days following the date hereof, the Debtor's counsel may file,
> on notice to all creditors (including Skyline) and the United States Trustee, a final
> application for the allowance of fees and reimbursement of expenses pursuant to §
> 330 of the Bankruptcy Code (and all applicable Rules, Local Rules, and Guidelines
> of the United States Trustee), to which all creditors and parties in interest reserve
> the right to object, and the amount so awarded pursuant to such final fee application
> following a hearing thereon shall be allowed as an administrative expense of the
> Debtor's estate pursuant to § 503(b) of the Bankruptcy Code and paid to the
> Debtor's counsel from the DIP Account.

Consent Order Conditionally Dismissing Chapter 11 Case at ¶ 6, Case No. 14-14303-RG, Docket

No. 58.

Finally, the Consensual Dismissal Order established that after the Debtor paid the

management fee, Debtor's counsel's fee, and all quarterly fees owed to the U.S. Trustee's Office

from the DIP Account, all monies remaining in the DIP Account were to be paid to Skyline.

Afterwards, the Debtor would close the DIP Account.

Fulfilling the obligations stated in the Consensual Dismissal Order, Debtor filed the

missing monthly operating reports for May and June 2015 on August 5, 2015, and Fiorelli filed

his certification of management services. Also, pursuant to the Consensual Dismissal Order,

7

Debtor's counsel filed a fee application. Although the Court entered the Consensual Dismissal Order, the case was not administratively closed.

According to Skyline, the May and June 2015 monthly operating reports revealed that Fiorelli was extracting funds from the DIP Account for personal use. Skyline admitted that it was fully aware Fiorelli used the company's funds for personal use in the past, as demonstrated in the previously filed monthly operating reports. Skyline asserted that the May and June 2015 operating reports, however, revealed a much higher dollar amount transferred to Fiorelli from the DIP Account than Skyline anticipated. In other words, the transfers to Fiorelli in May and June 2015 no longer followed previous patterns regarding the amounts transferred.

When Skyline discovered, through the May and June 2015 monthly operating reports, that Fiorelli had taken more funds from the DIP Account for his personal use in May and June than Skyline anticipated, Skyline, through an email to Debtor's counsel, demanded an accounting and necessary back-up documentation. Although objections to the content of the monthly operating reports were not expressly contemplated in the Consensual Dismissal Order, Skyline objected to withdrawal of any funds from the DIP Account and demanded Debtor provide the accounting and documentation through its Motion to vacate the Consensual Dismissal Order, described below. It appears Fiorelli subsequently voluntarily returned $17,000 to the DIP Account, at the direction of Debtor's counsel, and waived the right to collect the management fee provided for in the Consensual Dismissal Order.[3]

---

[3] The return of the $17,000 appears to have been prompted by Skyline's objection to the out-of-the-ordinary payments to Fiorelli.

### SKLYINE'S MOTION TO VACATE THE CONSENSUAL DISMISSAL ORDER

On August 21, 2015, Skyline filed a Motion for an Order: (A) Vacating Consent Order Dismissing Case; (B) Requiring Production of Backup Documentation for Alleged Expenses; (C) Directing Disgorgement of Improper Disbursements to Debtor's Principal and Others; (D) Directing Turnover of Funds to Skyline; and (E) Granting Skyline Leave to Prosecute Adversary Proceeding Under 11 U.S.C. § 549.

In its Motion, Skyline argued this Court should vacate the Consensual Dismissal Order pursuant to Federal Rule of Civil Procedure 60(b)(3), which allows the Court to vacate a judgment due to fraud, misrepresentation, or other misconduct by an opposing party. Skyline argued that it would not have entered into the Consensual Dismissal Order if it was aware of Fiorelli's unauthorized post-petition transfers. Skyline contended that it entered the Consensual Dismissal Order, which allowed Fiorelli a generous management fee, under the assumption that Debtor was collecting rents in the ordinary course of business, and the balance of the DIP Account was increasing "at a regular and ordinary pace." Skyline alleged that Debtor intentionally concealed Fiorelli's actions by failing to file monthly operating reports for May and June 2015. Therefore, Skyline argued the Consensual Dismissal Order should be vacated, no management fee should be allowed to Fiorelli, and the Court should rule on Skyline's previous Motion to dismiss, which was previously resolved by the Consensual Dismissal Order and Stay Relief Order.

Debtor responded during oral argument on January 12, 2016 that the May and June 2015 monthly operating reports were not intentionally withheld. Rather Debtor contended it filed the May and June 2015 monthly operating reports late because Debtor anticipated the Court would dismiss Debtor's case at the hearing on Skyline's Motion to Dismiss, originally scheduled for a hearing in May, but later adjourned. Debtor also noted that the previous monthly operating reports,

9

which showed similar disbursements to Fiorelli, were regularly provided during the pendency of the bankruptcy case, and that neither Skyline nor its predecessor ever filed an objection to any aspect of the monthly operating reports, the details of the reports, the payments to the creditors, etcetera until after the bankruptcy case was dismissed.

At oral argument, Skyline admitted it was aware of certain unauthorized post-petition transfers at the time it reached its agreement with Debtor, but failed to raise the issue with the Court at any time prior to its Motion to vacate the Consensual Dismissal Order. In fact, during oral argument on January 12, 2016, Skyline's counsel advised the Court that it was only now raising the issue about the Debtor's unauthorized post-petition payments because the Debtor broke its "pattern" and the payments were significantly more than Skyline expected and relied upon for its bargaining purposes. Simply, Skyline guessed the unauthorized post-petition transfers would be less based upon past disbursements, and guessed wrong.

Debtor further noted, at oral argument, the bankruptcy case has already been dismissed, Debtor completed all of its obligations set forth in the Consensual Dismissal Order, and once the Court addresses the pending fee applications, the case should be closed. Debtor asserted that the terms of the Consensual Dismissal Order were mutually acceptable and the Consensual Dismissal Order was freely entered into by both parties. Debtor alleged that Skyline obtained exactly what it bargained for under the language of the Consensual Dismissal Order, and therefore there are no applicable grounds to vacate the Consensual Dismissal Order.

## DEBTOR'S COUNSEL'S FEE APPLICATIONS

### Debtor's Counsel's First "Final" Fee Application

Debtor's counsel filed a fee application for $26,985 for services rendered from the Petition Date through August 5, 2015. Debtor's counsel noted that Skyline was aware of Debtor's use of

cash collateral[4] based on the monthly operating reports. Debtor's counsel asserted because Skyline

was on notice of the use of cash collateral and failed to object until after the motion to dismiss,

Skyline cannot recover damages for misused funds, citing to *In re National Safe Northeast, Inc.*,

76 B.R. 896, 907 (Bankr. D. Conn. 1987). Debtor's counsel also relied on the language of the

Consensual Dismissal Order to argue that Skyline consented to use of the funds in the DIP Account

to pay Debtor's counsel's attorney's fees. The pertinent language of the Consensual Dismissal

Order bears repeating and reads as follows:

> Within fourteen (14) days following the date hereof, the Debtor's counsel may file,
> on notice to all creditors (including Skyline) and the United States Trustee, a final
> application for the allowance of fees and reimbursement of expenses pursuant to §
> 330 of the Bankruptcy Code (and all applicable Rules, Local Rules, and Guidelines
> of the United States Trustee), to which all creditors and parties in interest reserve
> the right to object, and the amount so awarded pursuant to such final fee application
> following a hearing thereon shall be allowed as an administrative expense of the
> Debtor's estate pursuant to § 503(b) of the Bankruptcy Code and paid to the
> Debtor's counsel from the DIP Account.

Consent Order Conditionally Dismissing Chapter 11 Case, *supra*, at ¶ 6.

First, Skyline objected to the fee application in its entirety, alleging that it did not consent

to the payment of Debtor's counsel's fees from Skyline's property/collateral, and that its interest is

not adequately protected. Skyline claimed Debtor cannot rely on its consent to the Consensual

---

[4] Cash collateral is defined by the Bankruptcy Code as

> cash, negotiable instruments, documents of title, deposit account, or other cash equivalents
> whenever acquired in which the estate and an entity other than the estate have an interest and
> includes the proceeds, products, offspring, rents, or profits of property and the fees, charges,
> accounts or other payments for the use or occupancy of rooms and other public facilities in hotels,
> motels, or other lodging properties subject to a security interest as provided in section 522(b) of this
> title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). "The trustee [or DIP] may not use, sell, or lease cash collateral under paragraph (1) of this
subjection unless -- (a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and
a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." *Id.* § 363(c)(2).

Dismissal Order to be interpreted as consent to pay professional fees from its property/collateral because Skyline reserved the right to object to the fee application.

Second, Skyline objected to the amount of fees sought by Debtor's counsel. Skyline argued that the fees requested and the hours Debtor's counsel purported to spend on motions, pleadings, legal research, and monthly operating reports are excessive in comparison to the work that was completed and reflected on the docket, and therefore are unreasonable. Debtor's counsel replied that the amount sought was reasonable, necessary, and benefitted the estate pursuant to § 330(a)(3), and therefore must be granted in full.

### *Debtor's Counsel's Supplemental Fee Applications*

Debtor's counsel then filed two supplemental fee applications, seeking an additional $10,757, and $5,635, respectively, bringing the total fee application request to $43,377.50. The supplemental fee applications sought compensation for Debtor's counsel's services in response to Skyline's Motion to vacate the Consensual Dismissal Order. Skyline objected to each supplemental fee application, arguing that Debtor filed the bankruptcy petition in bad faith and failed to make any progress towards reorganization or liquidation, and therefore the fees should be denied.

Skyline also argued that if the Court finds Skyline consented to the use of its cash collateral to pay professional fees, those fees must be limited to those incurred by Debtor's counsel in providing services that were beneficial to the estate, were not adverse to the interests of Skyline, and were not for the benefit of Fiorelli personally. Specifically, Skyline argued the fees incurred in litigation against Skyline must be disallowed. In sum, Skyline asserts the maximum allowable attorney's fees should total no more than $14,872.50, if any.

### DEBTOR'S MOTION TO USE CASH COLLATERAL

On November 3, 2015, Debtor filed a Motion for an Order (1) Approving the settlement agreement and confirming the dismissal of Debtor's Chapter 11 case; or in the event Debtor's Bankruptcy is reopened, the Debtor crossmoves for the entry of an Order (2) Allowing the Debtor to use all rent proceeds from the Property, *nunc pro tunc*, to pay for all reasonable and necessary expenses of the Debtor, inception of its bankruptcy case to the present, including any compensation for managing the property, payment of repairs to the Property, and payment of professionals, including its attorneys; (3) Expunging the claim of Skyline based on its failure to comply with the provisions of Fed. R. Bankr. P. 3007; and (4) Entering sanctions against Skyline and its Counsel pursuant to 11 U.S.C. § 105(a).

The Motion requested that if the Court grants Skyline's Motion to vacate the Consensual Dismissal Order then, at the same time, the Court also approve Debtor's use of cash collateral, *nunc pro tunc*.

### DEBTOR'S COUNSEL'S MOTION TO WITHDRAW AS ATTORNEY

On December 17, 2015, Debtor's counsel filed a Motion to Withdraw as Attorney of Record for the Debtor pursuant to D.N.J. LBR 9010-2 and RPC 1.16(b). Debtor's counsel contends that since entry of the Consensual Dismissal Order he: made multiple court appearances, prepared and filed monthly operating reports, responses to Skyline's motions, and fee applications, all of which resulted in additional legal fees. Debtor represented to counsel, however, that it does not have the ability to pay the additional legal fees as a result of continued litigation.

Debtor's counsel argued that no parties will be prejudiced by his withdrawal because the Court already dismissed Debtor's bankruptcy case, and the continued litigation is directed against Fiorelli personally, rather than the Debtor. Debtor's counsel reasoned the Court should permit

13

withdrawal because Debtor's counsel received no compensation, and likely will not receive any compensation for continuing to represent Debtor.

**ORAL ARGUMENT ON JANUARY 12, 2016**

This Court heard oral argument on January 12, 2016. At the hearing, the parties reported that the issues have not been resolved despite the assistance of both the Honorable Rosemary Gambardella and Counsel from the United States Trustee's Office in attempting to facilitate a resolution of this matter.

Skyline began its presentation by arguing, pursuant to *In re Jason Realty*, 59 F.3d 423 (3d Cir. 1995) and the executed Assignment of Rents and Leases, it owns the rent and does not consent to paying counsel from the funds in the DIP Account. Therefore, despite the agreements memorialized in the Consensual Dismissal Order and Stay Relief Order, Skyline asserted it was entitled to all remaining monies in the DIP Account. This Court refused to consider any argument regarding title to the rent because the Court already consensually dismissed the case and the issues remaining arise from the two relevant Orders, not arguments existing prior to entry of the Orders.

Skyline next argued that the terms of the Consensual Dismissal Order were negotiated by Skyline utilizing a formula to estimate the dollar amount each party would ultimately receive from the DIP Account.[5] Although both parties were aware that Debtor had not yet filed the May and June 2015 monthly operating reports, Skyline allegedly anticipated the missing monthly operating reports would be consistent with the previously filed reports in the case and estimated approximately $60,000 remained in the DIP Account to fund the settlement. Apparently, during negotiations for the Consensual Dismissal Order, Debtor's counsel indicated to Skyline that his

---

[5] It appears this was Skyline's own inside formula, which is not part of the terms of the negotiations or the record.

fee application would seek approximately $27,000. In the meantime, unbeknownst to Debtor's counsel or Skyline, unauthorized post-petition transfers were depleting the DIP Account in May and June 2015, leaving only approximately $40,000, instead of the $60,000 anticipated by Skyline based upon Debtor's prior unauthorized transfers.

Skyline alleged that if it had known the amount of the latest unauthorized post-petition transfers, it would not have entered the Consensual Dismissal Order. The Court questioned the parties on whether the Consensual Dismissal Order conditioned dismissal on a minimum amount remaining in the DIP Account; the answer was no. The Consensual Dismissal Order contains no language conditioning dismissal on a minimum balance remaining in the DIP Account. The Consensual Dismissal Order *only* required the Debtor to file the missing monthly operating reports. The Consensual Dismissal Order contained no language providing relief from its terms based on the content of those missing monthly operating reports.

During oral argument, Debtor's counsel argued that Skyline should have included a "wiggle clause" in the Consensual Dismissal Order, a term he uses referring to cautionary contract protection clauses which provide relief from the contract when certain conditions are not met. Debtor's counsel argued that without a "wiggle clause" in the Conditional Dismissal Order permitting Skyline to "wiggle out" of the agreement, Skyline is not entitled to relief.[6] Simply, the Debtor argues that Skyline should be held to its bargain.

Next, Skyline disputed payment of Debtor's counsel's fee applications. Skyline argued that it cannot be forced to pay counsel fees for Debtor's counsel's services that were contrary to Skyline's interests. Skyline further alleged that it explicitly reserved its right to object to payment

---

[6] Debtor's counsel asserts a wiggle clause could have conditioned dismissal based upon the information in the monthly operating reports permitting Skyline to "wiggle out" of the deal and granting relief if a certain dollar amount did not remain in the DIP Account available for Skyline.

of fees from the DIP Account and in doing so reserved the right not to pay anything out of the DIP Account. Skyline admitted, however, that it did originally contemplate paying the fees out of the DIP Account at the time of the entry of the Consensual Dismissal Order.

The Court questioned Debtor's counsel regarding its right, if any, to receive payment from the DIP Account for the supplemental fee applications considering the Consensual Dismissal Order only permitted Debtor's counsel to file "a final fee application within fourteen days" of entry of the Consensual Dismissal Order. Debtor's counsel admitted the Consensual Dismissal Order contains no language permitting supplemental fee applications. The Court questioned Debtor's counsel why he had not added a "wiggle clause" to allow for supplemental fee applications in the event of continued litigation. Debtor's counsel conceded he did not include a "wiggle clause," but responded by arguing Skyline negotiated the Consensual Dismissal Order in bad faith, and therefore the supplemental fees should be granted. Finally, Debtor's counsel argued it would be inequitable to require counsel to continue to represent Debtor without payment for his services. The Court noted that each party was a victim of issues resulting from a consent order drafted without contingencies, or "wiggle clauses."

The Court gave the parties the option to further submit pleadings on the alleged fraud, calculation of counsel's fees, and whether fees incurred defending fee applications are recoverable. At the conclusion of the hearing, the Court reserved decision.

POST-HEARING SUBMISSIONS

Pursuant to the Court's allowance of optional post-hearing submissions, both Debtor and Skyline filed additional post-hearing submissions with the Court on January 26, 2016.

Notably, Skyline again admitted in its submission that it was aware of Debtor's unauthorized post-petition transfers throughout the bankruptcy case, long before the May and June

2015 monthly operating reports "uncovered" it. Specifically, Skyline's post-hearing submission stated, "in the months leading up to the filing of the motion to dismiss, the Debtor's monthly operating reports, which had been filed for all period[s] through March 2015, showed ordinary payments to utility companies, and only *minor abuses in the form of unauthorized payments to the Debtor's principal, Jack Fiorelli, or his wife, Izabella...*"

Skyline argued that the Consensual Dismissal Order should be vacated because "depletion of the DIP Account while it was negotiating with Skyline for consensual terms of dismissal constituted misconduct and fraud within the meaning of Rule 60(b)(3)."[7] Skyline therefore requested that the Court vacate the Consensual Dismissal Order to allow Skyline to prosecute an avoidance action to recover the funds improperly transferred by Fiorelli.

Debtor's submission reiterated that the Consensual Dismissal Order was drafted after several hours of negotiation, and argued that Skyline failed to demonstrate the elements of a fraud claim, specifically a material misrepresentation. Debtor also claimed that the amount currently in the DIP Account was never discussed in the negotiation of the Consensual Dismissal Order, nor was it a requirement for the settlement.

Regarding Debtor's counsel's original fee application, Skyline argued that: (i) because the Consensual Dismissal Order should be vacated, the counsel fees should not be paid out of the DIP Account based on *Jason Realty*; or alternatively, (ii) the fees should be limited to $14,782.50, if any, the amount Skyline believes was the extent of services provided by Debtor's counsel that were reasonable, necessary, and beneficial to the estate. Regarding Debtor's counsel's two

---

[7] Skyline set forth the elements of common law fraud in New Jersey: "(i) a material misrepresentation of a presently existing or past fact; (ii) knowledge or belief by the defendant of its falsity; (iii) an intention that the other person rely on it; (iv) reasonable reliance thereon by the other person; and (v) resulting damages." *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109 (2000); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

supplemental fee applications, Skyline argued that: (i) the Court should limit counsel to only the original fee application as stated in the Consensual Dismissal Order; (ii) the fee applications cannot be allowed to the extent they include fees based on litigation against Skyline; and (iii) under *Baker Botts LLP v. Asarco*, 576 U.S. ___, 135 S. Ct. 2158 (2015), fees incurred in defending fee applications are not compensable in bankruptcy court.

Debtor's counsel argued that all his fees were incurred to benefit the estate and bring finality to the case, even after the case was dismissed, and therefore the fee applications should be granted in full.

## DISCUSSION

### JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This

matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). Finally, venue is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.

### SKYLINE'S MOTION TO VACATE THE CONSENSUAL DISMISSAL ORDER

Skyline seeks to vacate the Consensual Dismissal Order pursuant to Federal Rule of Civil

Procedure 60(b), which allows the Court to grant relief from a final judgment, order, or proceeding

in certain limited circumstances.[8]  Federal Rule of Civil Procedure 60, made applicable by Federal

Rule of Bankruptcy Procedure 9024, provides, in relevant part:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion
> and just terms, the court may relieve a party or its legal representative from a final
> judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> …
>> (3) fraud (whether previously called intrinsic or extrinsic),
>> misrepresentation, or misconduct by an opposing party; [or]
>> …
>> (5) … applying it prospectively is no longer equitable…

Fed. R. Civ. P. 60(b). Relief from a judgment under Rule 60(b) should be granted only in

exceptional circumstances. *Boughner v. Sec'y of Health, Educ. & Welfare, U.S.*, 572 F.2d 976, 977

(3d Cir. 1978).

> Rule 60(b) relief is designed to afford parties an opportunity to resolve a dispute on
> the merits. When the parties submit to an agreed-upon disposition instead of
> seeking a resolution on the merits, however, the burden to obtain Rule 60(b) relief
> is heavier than if one party proceeded to trial, lost, and failed to appeal.

---

[8]  Skyline specifically argued that the Consensual Dismissal Order should be vacated pursuant to Rule 60(b)(3). During oral argument, however, Skyline referred to and/or implicated several provisions of Rule 60(b). Therefore, in addition to Rule 60(b)(3), the Court looks to Rule 60(b)(1) and (5) to determine whether they apply.

*Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986). Here the parties reached an agreement on the disposition of the case. Therefore, the burden Skyline must meet to vacate the Conditional Dismissal Order under Rule 60(b) is higher than to vacate a judgment on the merits. *See id.*

Skyline asserts this Court should vacate the Consensual Dismissal Order even though it already received a large part of the benefit it negotiated, namely stay relief as to the Property.[9] Skyline claims it would not have agreed to the Consensual Dismissal Order if it knew of Debtor's unauthorized post-petition transfers. Skyline failed to prove, under Federal Rule of Civil Procedure 60(b)(1), (3), or (5), that the Consensual Dismissal Order should be vacated based on mistake, fraud, or changed circumstances. This Court is unwilling to take the extraordinary measure of vacating a consent order based on allegations, completely unsupported in the record, of negotiations and considerations leading to the Consensual Dismissal Order. The Consensual Dismissal Order embodies the terms and conditions agreed upon by the parties. Skyline, by its own admission, was aware of and negotiated with the knowledge of the transfers at issue. Simply, Skyline incorrectly estimated its return. Skyline's miscalculation fails to amount to cause to vacate the Consensual Dismissal Order under Federal Rule of Civil Procedure 60(b)(1), (3), or (5) and Skyline's motion is therefore denied.

### *FRCP 60(b)(1) Mistake, Inadvertence, Surprise, or Excusable Neglect*

Federal Rule of Civil Procedure 60(b)(1) permits the court, "[o]n motion and just terms, to relieve a party or its legal representative from a final judgment, order, or proceeding for …mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *see In re G-I Holdings, Inc.*, 472 B.R. 263, 279 (Bankr. D.N.J. 2012).

---

[9] This Court finds it interesting that Skyline only requested to undo one part of a two part deal. Skyline never sought to reimpose the automatic stay (part 1) and vacate the Consensual Dismissal Order (part 2) to place the parties back in their original positions before they reached agreements embodied in the two Orders.

"Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." *Nemaizer*, 793 F.2d at 62. In particular, an attorney's failure to examine all aspects of a chosen course of action gives no basis for relief from a judgment. *See id.* (citing *United States v. O'Neil*, 709 F.3d 361, 373 (5th Cir. 1983); *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693, 696-97 (5th Cir.), *cert. denied sub nom.*, *Chick Kam Choo v. Esso Oil Co.*, 464 U.S. 826, 104 S. Ct. 98, 78 L.E.d.2d 103 (1983)). An attorney's actions, whether arising from neglect, carelessness, inexperience, or some other reason, are generally attributable to the client. *See id.* (citing *Ackerman v. United States*, 340 U.S. 193, 197-98 (1950)). Anything else makes the finality of judgments rule devoid of meaning. *Id.* at 63.

Here, Skyline failed to show that anyone made a mistake other than Skyline in its calculations. The parties each negotiated the Consensual Dismissal Order through counsel. Skyline repeatedly admitted it was aware Fiorelli was extracting funds from the DIP Account throughout the bankruptcy case. Skyline never made the relief under the Consensual Dismissal Order dependent upon a review of the May and June 2015 monthly operating reports, which the Debtor filed as required by it. Skyline also input no language into the Consensual Dismissal Order requiring Debtor to pay it a concrete amount from the DIP Account or any other source. Skyline, for reasons unknown to this Court, estimated and decided $60,000 would remain in the DIP Account available for its benefit. Yet, Skyline never included language in the Consensual Dismissal Order requiring the DIP Account to contain an amount certain once disbursements were made under the Consensual Dismissal Order. Simply, the Consensual Dismissal Order contains no language setting forth any particular amount or range of money that must remain in the DIP Account for Skyline's benefit. This Court will not grant relief based on Skyline's failure to either

21

estimate a return satisfactory to it or simply because it is unhappy with the results of its bargain.

Nothing set forth by Skyline justifies the extraordinary remedy of vacating the Consensual

Dismissal Order under Federal Rule of Civil Procedure 60(b)(1). Accordingly, Skyline's motion

to vacate the Consensual Dismissal Order under Federal Rule of Civil Procedure 60(b)(1) is

denied.

### *FRCP 60(b)(3) Fraud or Misrepresentation*

Federal Rule of Civil Procedure 60(b)(3) provides "[o]n motion and just terms, the court

may relieve a party or its legal representative from a final judgment, order, or proceeding for …

fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an

opposing party." Fed. R. Civ. P. 60(b)(3).

"A court may vacate a judgment under Rule 60(b)(3) only if a party establishes, by clear

and convincing evidence, that the judgment was obtained through such fraud that 'prevented [him]

from fully and fairly presenting his case.'" *Boldrini v. Wilson*, 609 F. App'x 721, 724 (3d Cir.

2015) (quoting *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)). To grant relief from an

order or judgment under Rule 60(b)(3) the Court ordinarily must find that "1) the fraud 'is directed

to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false

statements or perjury'…2) the fraud involves 'the most egregious conduct such as bribery of a

judge…or the fabrication of evidence by a party in which an attorney is implicated'…and 3) the

party perpetrating the fraud 'acted with an intent to deceive or defraud the court.'" *Krietzberg v.

Mucci (In re Mucci)*, 488 B.R. 186, 193 (Bankr. D.N.M. 2013) (internal citations omitted).

Skyline asserted it entered the Consensual Dismissal Order based upon its assumption that

the balance of the DIP Account was increasing steadily. Clearly, Skyline's assumption was

erroneous. Skyline would like this Court to believe that the Debtor blindsided Skyline by its

unauthorized post-petition transfers to Fiorelli, which Skyline asserts resulted in the Debtor

committing fraud on Skyline. Yet, Skyline admittedly knew of Fiorelli's use of the funds in the

DIP Account each month during the pendency of the bankruptcy case based upon the Debtor's

monthly operating reports. Skyline possessed actual knowledge of the Debtor's transfers and never

brought the issue to the attention of the Court – at least not until Skyline received certain benefits

and then decided it did not like the results of the deal it made with the Debtor. This Court will not

vacate the Consensual Dismissal Order based on fraud when Skyline had knowledge of "some"

unauthorized post-petition transfers prior to entering the Consensual Dismissal Order, yet failed to

advise the Court or negotiate terms to address the issue.[10] Accordingly, this Court will not vacate

the Consensual Dismissal Order based on "fraud" under Federal Rule of Civil Procedure 60(b)(3)

and Skyline's motion to vacate on this ground is denied.

### *FRCP 60(b)(5) Changed Circumstances*

Federal Rule of Civil Procedure 60(b)(5) provides that "[o]n motion and just terms, the

court may relieve a party or its legal representative from a final judgment, order, or proceeding …

[if] applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

A court determining whether to vacate or modify a consent decree must evaluate the

specific and unique set of circumstances before it. *Democratic Nat'l Comm. v. Republican Nat'l

Comm.*, 673 F.3d 192, 202 (3d Cir. 2012). "[B]y signing a consent decree, signatories make a 'free,

calculated and deliberate choice to submit to an agreed upon decree rather than seek a more

---

[10] Although Fiorelli's actions as set forth constitute an unauthorized post-petition transfer as admitted at oral argument
on January 12, 2016 by Debtor's counsel, which Skyline refers to as "pilfering" and "fraud," this Court makes no
finding regarding fraud. Unauthorized does not necessarily equate to fraud. Skyline admittedly knew of the Debtor's
post-petition transfers because of the filed monthly operating reports. Skyline never objected to the transfers, and
Skyline still voluntarily entered the Consensual Dismissal Order despite its knowledge of the transfers. Further, the
case was a single creditor case wherein Skyline was the only creditor. Through the act of entering the Consensual
Dismissal Order Skyline acquiesced to the transfers.

favorable litigated judgment.'" *Id.* at 201 (quoting *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979)). A consent order may be not rescinded or modified merely because it is no longer convenient for a party to comply with the consent order. *Democratic Nat'l Comm.*, 673 F.3d at 201-02. The court may only modify or vacate a consent decree, under Rule 60(b)(5), if a party can prove at least one of the following four factors by a preponderance of the evidence: (1) a significant change in factual conditions; (2) a significant change in law; (3) that a decree proves to be unworkable because of unforeseen obstacles; or (4) that enforcement of the decree without modification would be detrimental to the public interest. *Id.* at 202.

The Court in *Democratic National Committee v. Republican National Committee* noted:

> Typically, courts should not grant modification or vacatur 'where a party relies upon events that actually were anticipated at the time it entered into a consent decree.' If a party agreed to the decree notwithstanding the anticipated change in conditions, 'that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b).'

*Id.* (internal citations omitted).

Skyline alleges it would not have agreed to the Consensual Dismissal Order if it knew that Debtor was extracting funds from the DIP Account. This argument is nonsensical in light of Skyline's previous admission that it knew about the unauthorized post-petition transfers throughout the case. Again, Skyline anticipated a better return on the funds remaining in the DIP Account after certain agreed upon disbursements. Skyline underestimated the amount of Debtor's transfers in May and June 2015. Skyline failed to require the Debtor to pay Skyline an amount certain pursuant to the Consensual Dismissal Order. Skyline now wants this Court to remedy its flawed assumption regarding the amount remaining in the DIP Account and partially undo its agreement with the Debtor, which this Court will not do. Skyline failed to demonstrate a significant

24

change in factual conditions nor an unforeseen obstacle worthy of relief under Rule 60(b)(5).

Accordingly, Skyline's Motion for relief under Federal Rule of Civil Procedure 60(b)(5) is denied.

## DEBTOR'S COUNSEL'S FEE APPLICATIONS

The starting point for an evaluation of a professional fee award in a bankruptcy case is 11

U.S.C. § 330, which provides:

> (a)(1) After notice to any parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328 and 329 [of this title], the court may award to a trustee . . . , an examiner . . . , or a professional person employed under section 327 or 1103 [of this title]
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney or by any paraprofessional person employed by any such person; and
>> (B) reimbursement for actual, necessary expenses.
> . . . .
> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors including -
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>> (D) whether the services were performed with a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;
>> …
>> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners . . . .
> (4)(A) Except as provided in paragraph (B), the court shall not allow compensation for –
>> (i) unnecessary duplication of services; or
>> (ii) services that were not –
>>> (I)     Reasonably likely to benefit the debtor's estate; or
>>> (II)    Necessary to the administration of the case.

11 U.S.C. § 330(a).

The Third Circuit established certain factors for determining the reasonableness of fees. *See Lindy Bros. Builders Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973); *In re Am. Mortg. & Inv. Servs.*, 158 B.R. 43, 47 (Bankr. D.N.J. 1993). The first step in valuing an attorney's services is to ascertain the time spent and fixing a reasonable hourly rate, taking into account the attorney's legal reputation and status. This is "the lodestar of the court's fee determination." *See Lindy Bros. Builders Inc.*, 487 F.2d at 167. The court then must take into account two other factors: (1) the quality of the work performed, and (2) the contingent nature of success. *See id.* at 167-68; *see also In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833 (3d Cir. 1994) (reaffirming the lodestar approach in calculating attorney's fees). Bankruptcy courts also traditionally look to certain factors in determining professional fees, including the: time spent; intricacies of the legal questions involved; size of the debtor's estate; opposition encountered; and results obtained. *See In re Paramount Merrick Inc.*, 252 F.2d 482, 485 (2d Cir. 1958); *In re Hardwick & Magee Co.*, 355 F. Supp. 58, 64 (E.D. Pa. 1973).

Here, Debtor's counsel submitted a final fee application and then two supplemental fee applications, totaling $43,377.50. The Consensual Dismissal Order permitted Debtor's counsel to file *only one* final fee application, within fourteen days of entry of the Consensual Dismissal Order.[11] This Court finds the first fee application, in the amount of $26,985 for work performed by Debtor's counsel from the petition date to August 5, 2014, reasonable. The work in the first fee application consisted of Debtor's counsel assisting the Debtor throughout the bankruptcy case and

---

[11] This Court notes the first fee application was filed outside of the fourteen-day window. Although Skyline objected to payment of the Debtor's counsel's fee from the DIP Account, it failed to raise any objection to the date the fee application was filed. While this Court has held the parties to the terms of the Consensual Dismissal Order, Skyline appears to have waived an objection on the timeliness of the fee application.

providing services leading to both the Stay Relief Order and Consensual Dismissal Order. Both Orders benefitted both the estate and Skyline as demonstrated by the consensual resolution of both matters. The second and third fee applications, however, were not contemplated by the Consensual Dismissal Order. Because the second and third fee applications are outside the scope of the parties' agreement, this Court found no reason to examine them for reasonableness as they do not comply with the Consensual Dismissal Order.[12] Therefore, the second and third fee applications are denied.

Next, the Court must determine whether the fees should be paid out of the DIP Account pursuant to the Consensual Dismissal Order. Skyline agreed that Debtor's counsel's fees would be paid from the DIP Account by the clear terms of the Consensual Dismissal Order, but preserved the right to object to the fees. *See* Consent Order Conditionally Dismissing Chapter 11 Case, *supra*, at ¶ 6 ("Debtor's counsel may file…a final application for the allowance of fees and reimbursement of expenses…to which all creditors and parties in interest reserve the right to object, and the amount so awarded…shall be…paid to the Debtor's counsel from the DIP Account."). As per the express language of the Consensual Dismissal Order, the parties contemplated that Skyline reserved the right to object to the amount requested in the fee application, yet that was all Skyline preserved. In preserving its right to object, Skyline anticipated paying the fees and agreed Debtor's counsel would receive compensation from the DIP Account. Skyline admitted as much at oral argument. The only open issue was the amount of the fees Debtor's counsel would receive. The amount of Debtor's counsel's fees is the only objection preserved by Skyline. So this Court determines Debtor will be paid from the DIP Account; the question remains how much.

---

[12] Even if the second and third fee applications appeared reasonable on their face, this Court would have to consider the American Rule, and the holding in *Baker Botts LLP v. Asarco LLC*, and disallow any fees incurred in defense of the fee applications. 576 U.S. ___, 135 S. Ct. 2158 (2015).

Similarly to Skyline's failure to accurately memorialize its expectations with respect to the amount it would receive from the DIP Account, Debtor's counsel failed to negotiate a "wiggle clause" [13] in the Consensual Dismissal Order permitting submission of supplemental fee applications in the event of continued litigation after entry of the Consensual Dismissal Order. The Consensual Dismissal Order states "[w]ithin fourteen days following the date hereof, the Debtor's counsel may file…a final application for the allowance of fees and reimbursement of expenses pursuant to § 330 of the Bankruptcy Code…" As admitted by Debtor's counsel at oral argument, the Consensual Dismissal Order neither contemplates additional litigation between the parties or anyone else nor does it include multiple fee applications.

The parties must be bound, on both sides, by the provisions in the Consensual Dismissal Order, which was their agreement. The Consensual Dismissal Order referenced only one final fee application by Debtor's counsel. Therefore, based on the parties bargain, Debtor's counsel is limited to a final fee application. As a result, this Court will allow Debtor's counsel's first and final fee application, in the amount of $26,985, in full, as the amount is reasonable for the services provided and under the circumstances of this case. It shall be paid from the DIP Account, as this is the only fee application contemplated and agreed to by the parties in the Consensual Dismissal Order. Based upon this result, this Court has no need to further analyze the two supplemental fee

---

[13] The Court utilizes the term "wiggle clause" because Debtor's counsel made much ado about Skyline's failure to include one. This Court must hold Debtor's counsel to those same requirements. Here, Debtor's counsel is hoisted by his own petard.

28

applications[14] and/or whether they violate the holding set forth in *Baker Botts*, 576 U.S. ___, 135 S. Ct. 2158 (2015).

## DEBTOR'S MOTION TO USE CASH COLLATERAL

Skyline failed to demonstrate any reason to vacate the Consensual Dismissal Order. Therefore, the Debtor's Motion to use cash collateral is moot, and is denied as such.

## DEBTOR'S COUNSEL'S MOTION TO WITHDRAW AS ATTORNEY

Rule 9010-2 of the Local Bankruptcy Rules for the District of New Jersey requires that "[u]nless another attorney is substituted, an attorney may not withdraw an appearance except by permission of court." *Id.*

Further, "the court must consider the criteria set forth in Rule 1.16 of the New Jersey Rules of Professional Conduct which…permits a 'lawyer [to] withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client,' or if any of the criteria enumerated in (b)(1)-(6) is met." *In re Lands End Leasing, Inc.*, 220 B.R. 226, 235 (Bankr. D.N.J. 1998).

In determining whether an attorney should be permitted to withdraw from representation, the Court considers the following factors: "(1) the reasons withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." *Hargrove v. Phila.*, 1995 WL 550441, at *1 (E.D. Pa. Sept. 15, 1995).

---

[14] While Debtor's counsel *may* be able to prove portions of his supplemental fee applications should be allowed, there is no source from which to pay them as the Debtor has no funds, Skyline never agreed to them, and the case is dismissed. Accordingly, there is no need for further evaluation as no source remains to collect any amount that might be owed.

The Bankruptcy Court for the District of New Jersey noted in *In re Lands End Leasing, Inc.* that "RPC 1.16(c) recognizes that 'even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency.'" 220 B.R. at 235. Pursuant to the New Jersey Rules of Professional Conduct and the Local Civil Rules, the determination of whether counsel may withdraw from representation of the client is in the discretion of the Court. *Id.* The *Lands End Leasing* court further acknowledged "that a client's refusal to pay proper fees and expenses after being reasonably [sic] requested to do so may be cause for an attorney's withdrawal in some cases." *Id.*

Since this Court is not vacating the Consensual Dismissal Order and reopening the bankruptcy case, this Court finds that the Debtor will not be prejudiced by withdrawal of counsel unless litigation continues in the matter. Counsel is therefore permitted to withdraw fifteen (15) days after entry of the Order accompanying and filed with this Opinion. To the extent that any motion affecting the Debtor is filed within the fifteen-day period, the Court rescinds permission to withdraw, and Debtor's counsel may bring another motion setting forth why withdrawal would not result in prejudice to the Debtor.

## **CONCLUSION**

Skyline's Motion to vacate the Consensual Dismissal Order is hereby DENIED with prejudice. Debtor's counsel's fee application dated August 14, 2015 in the amount of $26,985 is GRANTED to be paid out of the DIP Account. Debtor's counsel's supplemental fee application dated October 6, 2015, in the amount of $10,757.50 is DENIED. Debtor's counsel's supplemental fee application dated November 3, 2015, in the amount of $5,635 is DENIED. Debtor's Motion to use cash collateral is DENIED as moot. Debtor's counsel's motion to withdraw is CONDITIONALLY GRANTED.

An order consistent with this Opinion will be entered.


STACEY L. MEISEL
UNITED STATES BANKRUPTCY JUDGE


Dated: 8/23/16